**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| TAVAUGHN PERRY, Individually and for Others Similarly Situated, 924 North Hill Road Baltimore, MD 21218 <br><br> v. <br><br> UTILIQUEST, LLC, 2575 Westside Parkway, Suite 100 Alpharetta, GA 30004 <br><br>     <u>Serve:</u> <br>     The Corporation Trust, Inc. <br>     2405 York Road, Suite 201 <br>     Lutherville-Timonium, MD 21093 | **Case No. _____** <br><br> Jury Trial Demanded <br><br> Rule 23 Class Action |

**ORIGINAL CLASS ACTION COMPLAINT**

**SUMMARY**

1.     Tavaughn Perry ("Perry") brings this class action to recover unpaid wages and other damages from UtiliQuest, LLC ("UtiliQuest").

2.     UtiliQuest employed Perry as one of its Hourly Utility Locators (defined below) in Maryland.

3.     Perry and the other Hourly Utility Locators regularly work more than 40 hours a week.

4.     But UtiliQuest does not pay Perry and the other Hourly Utility Locators for all the hours they work.

5.     Instead, UtiliQuest requires Perry and the other Hourly Utility Locators to perform significant compensable work "off the clock" without pay.

6.     Specifically, UtiliQuest prohibits Perry and the other Hourly Utility Locators from clocking in for their shifts until they arrive at their first assigned ticket; and UtiliQuest requires Perry

1

and the other Hourly Utility Locators to clock out for their shifts when they leave their last assigned ticket (UtiliQuest's "ticket to ticket policy").

7.    But to meet UtiliQuest's strict productivity requirements, Perry and the other Hourly Utility Locators are forced to perform their regular utility locating duties "off the clock" before arriving to their first assigned ticket and after leaving their last assigned ticket.

8.    Perry and the Hourly Utility Locators are thus not paid for the time they spend performing this pre- and post-ticket work "off the clock."

9.    UtiliQuest's uniform "ticket to ticket" policy violates the Maryland Wage and Hour Law ("MWHL") by depriving Perry and the other Hourly Utility Locators of overtime wages for all overtime hours worked.

10.    Likewise, UtiliQuest's uniform "ticket to ticket" policy violates the Maryland Wage Payment and Collective Law ("MWPCL") by withholding earned wages from Perry and the other Hourly Utility Locators for all hours worked.

### JURISDICTION & VENUE

11.    This Court has original subject matter jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

12.    Specifically, (a) the matter in controversy exceeds $5,000,000; (b) at least one member of one member of Perry' proposed class of Hourly Utility Locators and UtiliQuest are citizens of different states (indeed, Perry is a Mryland citizen, whereas UtiliQuest is a Georgia citizen); and (c) the proposed class of Hourly Utility Locators exceeds 100 members.

13.    This Court has specific personal jurisdiction over UtiliQuest with respect to this action because UtiliQuest employed Perry and the other Hourly Utility Locators in Maryland.

14.    Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

2

15. Specifically, UtiliQuest employed Perry in and around Baltimore, Maryland, which is in this District and Division.

**PARTIES**

16. Perry is an adult individual residing in Baltimore, Maryland.

17. Perry worked for UtiliQuest as a Utility Locator in and around Baltimore, Maryland from approximately August 2021 until August 2022.

18. At all relevant times, Perry was UtiliQuest's covered "employee" within the meaning of the MWHL and MWPCL.

19. Throughout his employment, UtiliQuest classified Perry as non-exempt and paid him on an hourly basis.

20. Throughout his employment, UtiliQuest subjected Perry to its uniform, illegal "ticket to ticket" policy, prohibiting him from clocking in for his shifts until he arrived at his first assigned ticket and requiring him to clock out for his shifts when he left his last assigned ticket.

21. But throughout his employment, UtiliQuest required Perry to perform compensable work "off the clock" (without pay) before arriving to his first assigned ticket and after leaving his last assigned ticket.

22. Perry brings this class action on behalf of himself and other similarly situated hourly, non-exempt Utility Locators in Maryland who were subject to UtiliQuest's illegal "ticket to ticket" policy.

23. UtiliQuest prohibits each of these Utility Locators from clocking in until they arrive at their first assigned ticket and requires them to clock out when they leave their last assigned ticket.

24. But UtiliQuest also requires each of these Utility Locators to perform compensable work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket.

25. Thus, UtiliQuest uniformly deprives these Utility Locators of overtime wages for all hours worked after 40 in a workweek in violation of the MWHL.

26. Likewise, UtiliQuest uniformly withholds earned wages from these Utility Locators for all hours worked in violation of the MWPCL.

27. The putative class of similarly situated employees is defined as:

**All individuals who worked for UtiliQuest as hourly Utility Locators in Maryland at any time during the past 3 years ("Hourly Utility Locators").**

28. UtiliQuest is a Georgia limited liability company headquartered in Alpharetta, Georgia.

29. UtiliQuest is registered to do business in Maryland.

30. At all relevant times, UtiliQuest transacted and conducted substantial business in Maryland.

31. At all relevant times, UtiliQuest was subject to the MWHL and MWPCL because UtiliQuest was (and is) an "employer" within the meaning of the MWHL and MWPCL.

32. UtiliQuest may be served through its registered agent: **The Corporation Trust, Inc., 2405 York Road, Suite 201, Lutherville-Timonium, MD 21093**.

## FACTS

33. UtiliQuest bills itself as "a quality provider of damage prevention and infrastructure-related services specializing in underground facility locating serving the gas, electric, and telecommunications industries" across the country, including in Maryland.[1]

34. To meet its business objectives, UtiliQuest hires Utility Locators (including Perry and the other Hourly Utility Locators) to provide underground utility locating services to its clients.

35. UtiliQuest uniformly classifies Perry and its other Hourly Utility Locators as non-exempt and pays them on an hourly basis.

---

[1] https://utiliquest.com/about/ (last visited December 12, 2023).

4

36. Perry and the other Hourly Utility Locators regularly work more than 40 hours a week.

37. But UtiliQuest does not pay Perry and its other Hourly Utility Locators for all their hours worked.

38. Instead, UtiliQuest uniformly subjects Perry and its other Hourly Utility Locators to its illegal "ticket to ticket" policy and forces these employees to perform compensable work "off the clock" before and after clocking in and out for their shifts.

39. While exact job duties and precise locations may differ, Perry and the other Hourly Utility Locators are subject to UtiliQuest's same or similar illegal policy—UtiliQuest's "ticket to ticket" policy—for similar work.

40. For example, Perry worked for UtiliQuest as a Utility Locator in and around Baltimore City, Maryland from approximately August 2021 until August 2022.

41. Perry was UtiliQuest's hourly employee.

42. As a Utility Locator, Perry's primary responsibilities included locating network lines for gas, electrical, cable, and communications companies (UtiliQuest's clients) and identifying whether the utility owner's underground utilities conflict with proposed excavation locations.

43. Throughout his employment, UtiliQuest required Perry to report his work time to UtiliQuest for approval through its uniform timekeeping system.

44. Throughout his employment, Perry regularly worked more than 40 hours a week.

45. Indeed, Perry typically worked 12 hours a day for at least 5 days a week (or 60+ hours a week).

46. But throughout his employment, UtiliQuest subjected Perry to its illegal "ticket to ticket" policy.

47.    Specifically, UtiliQuest prohibited Perry from clocking in for his shifts until he arrived at his first assigned ticket and required him to clock out for his shifts when he left his last assigned ticket.

48.    But UtiliQuest also required Perry to perform compensable work "off the clock" (without pay) before arriving to his first assigned ticket and after leaving his last assigned ticket.

49.    Specifically, to meet UtiliQuest's strict productivity requirements, Perry was forced to review tickets, route plan, make/take calls from UtiliQuest's clients, perform mandatory vehicle inspections on his company-issued vehicle, load his utility locating equipment into his company-issued vehicle, and drive to his first assigned ticket "off the clock" and without pay.

50.    Likewise, after clocking out upon completing his last assigned ticket, Perry was forced to drive home, unload his utility locating equipment from his company-issued vehicle, perform mandatory vehicle inspections on his company-issued vehicle, review tickets, route plan, make/take calls from UtiliQuest's clients, and respond to any emergencies "off the clock" and without pay.

51.    This pre- and post-ticket "off the clock" work took Perry approximately 1 to 2 hours a day (or 5 to 10+ hours a week).

52.    But under UtiliQuest's illegal "ticket to ticket" policy, UtiliQuest did not pay Perry for his mandatory and necessary pre- and post-ticket "off the clock" work.

53.    So, rather than receiving overtime pay for all his hours worked over 40 in a week, under its illegal "ticket to ticket" policy, UtiliQuest only paid Perry for the time he worked between his arrival at his first assigned ticket and his departure from his last assigned ticket in violation of the MWHL.

54.    Likewise, as a result of its illegal "ticket to ticket" policy, UtiliQuest willfully withheld earned wages from Perry for the compensable work he performed before he arrived at his first assigned ticket and after he left his last assigned ticket in violation of the MWPCL.

55.     UtiliQuest subjects its other Hourly Utility Locators according to the same illegal "ticket to ticket" policy it imposed on Perry.

56.     Like Perry, UtiliQuest pays its other Hourly Utility Locators on an hourly basis.

57.     Like Perry, UtiliQuest requires its other Hourly Utility Locators to report their hours worked to UtiliQuest for approval via UtiliQuest's uniform timekeeping system.

58.     UtiliQuest's records show that, like Perry, the other Hourly Utility Locators regularly work more than 40 hours a week.

59.     Indeed, like Perry, the other Hourly Utility Locators typically work 12 hours a day for at least 5 days a week (or 60+ hours a week).

60.     UtiliQuest uniformly subjects its other Hourly Utility Locators to the same policies, procedures, and strict operational and productivity requirements that it imposed on Perry.

61.     UtiliQuest uniformly requires Perry and the other Hourly Utility Locators to complete their work tickets in a timely manner per UtiliQuest's company-wide policy.

62.     UtiliQuest uniformly pressures and expects Perry and the other Hourly Utility Locators to complete as many tickets as possible.

63.     And UtiliQuest closely supervises and tracks Perry's and the other Hourly Utility Locators' productivity through its ticketing system (Q Manager) to ensure they comply with UtiliQuest's uniform expectations and complete their heavy workloads.

64.     In fact, UtiliQuest installs GPS trackers and/or dash cameras on Perry's and the other Hourly Utility Locators' company-issued vehicles to monitor all their activities, movements, and locations to ensure they complete their heavy workloads in accordance with UtiliQuest's strict productivity and operational requirements.

65.     But, like Perry, UtiliQuest does not pay its other Hourly Utility Locators for all their hours worked.

66.     Instead, UtiliQuest subjects its other Hourly Utility Locators to its same illegal "ticket to ticket" policy that it imposed on Perry.

67.     Specifically, UtiliQuest prohibits its Hourly Utility Locators (like Perry) from clocking in for their shifts until they arrive at their first assigned ticket and requires them to clock out for their shifts when they leave their last assigned ticket.

68.     But like Perry, UtiliQuest also requires its other Hourly Utility Locators to perform compensable work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket.

69.     The "off the clock" work Perry and the other Hourly Utility Locators perform before they arrive at their first assigned ticket and after they leave their last assigned ticket is similar if not the same.

70.     Specifically, before clocking in for their shifts, the other Hourly Utility Locators (like Perry) are forced to review tickets, route plan, make/take calls from UtiliQuest's clients, perform mandatory vehicle inspections on their company-issued vehicles, load their utility locating equipment into their company-issued vehicles, and drive to their first assigned ticket "off the clock" (without pay) to meet UtiliQuest's strict productivity requirements.

71.     Likewise, after clocking out for their shifts, the other Hourly Utility Locators (like Perry) are forced to drive home, unload their utility locating equipment from their company-issued vehicles, perform mandatory vehicle inspections on their company-issued vehicles, review tickets, route plan, make/take calls from UtiliQuest's clients, and respond to any emergencies "off the clock" (without pay) to meet UtiliQuest's strict productivity requirements.

72.     And like Perry, the other Hourly Utility Locators spend approximately 1 to 2 hours a day (or 5 to 10+ hours a week) performing this compensable pre- and post-ticket work "off the clock" without pay.

73.     UtiliQuest controls Perry's and the other Hourly Utility Locators' pre- and post-ticket "off the clock" work, and this "off the clock" work is undertaken primarily for the benefit of UtiliQuest's business of providing utility locating services to its clients.

74.     Further, this mandatory pre- and post-ticket "off the clock" work is necessary to the principal work Perry and the other Hourly Utility Locators perform as UtiliQuest Utility Locators.

75.     Indeed, Perry and the other Hourly Utility Locators cannot provide utility locating services to UtiliQuest's clients in accordance with UtiliQuest's strict productivity and operational requirements unless they perform this pre- and post-ticket "off the clock" work.

76.     In other words, Perry's and the other Hourly Utility Locators' mandatory pre- and post-ticket "off the clock" work is a fundamental requirement of their jobs as UtiliQuest Utility Locators.

77.     Indeed, UtiliQuest could not eliminate this pre- and post-ticket "off the clock" work altogether without impairing Perry's and the other Hourly Utility Locators' ability to perform their utility locating work.

78.     Rather, this mandatory pre- and post-ticket "off the clock" work is integral and indispensable to Perry's and the other Hourly Utility Locators' work as UtiliQuest Utility Locators.

79.     Thus, Perry and the other Hourly Utility Locators routinely perform this mandatory pre- and post-ticket "off the clock" work for UtiliQuest's—not their own—predominant benefit.

80.     And UtiliQuest knows Perry and its other Hourly Utility Locators perform this compensable pre- and post-ticket work "off the clock" because UtiliQuest requires them to do so.

81.     Further, UtiliQuest closely monitors and tracks Perry and the other Hourly Utility Locators work time and locations via its company-wide ticketing system, GPS trackers, and/or dash cameras to ensure they meet UtiliQuest's strict productivity requirements.

82.     Specifically, using timecard details and GPS data tracked by UtiliQuest's uniform

9

ticketing system, UtiliQuest can easily determine whether Perry and the other Hourly Utility Locators are working "off the clock" before and after their shifts.

83.     In fact, UtiliQuest management level employees can easily determine if Perry and the other Hourly Utility Locators are clocked out and if their vehicles are moving (and, therefore, they are working or traveling to and from tickets).

84.     And Perry and the other Hourly Utility Locators repeatedly complained to UtiliQuest about being forced to work "off the clock" to complete their heavy workloads in satisfaction of UtiliQuest's strict productivity and operational requirements.

85.     But UtiliQuest fails to exercise its duty as Perry's and the other Hourly Utility Locators' employer to ensure these employees are not performing work that UtiliQuest does not want performed "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket.

86.     Thus, UtiliQuest requested, suffered, permitted, or allowed Perry and its other Hourly Utility Locators to work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket.

87.     Despite accepting the benefits, UtiliQuest does not pay Perry and its other Hourly Utility Locators for the time they spend performing this compensable work "off the clock."

88.     Thus, under UtiliQuest's illegal "ticket to ticket" policy, Perry and the other Hourly Utility Locators are denied overtime pay for the time they spend performing compensable work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket during workweeks in which they work over 40 hours in willful violation of the MWHL.

89.     Likewise, under its illegal "ticket to ticket" policy, UtiliQuest willfully withholds earned wages from Perry and the other Hourly Utility Locators for the time they spend performing

compensable work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket in willful violation of the MWPCL.

## CLASS ACTION ALLEGATIONS

90. Perry incorporates all other paragraphs by reference.

91. Like Perry, the other Hourly Utility Locators were uniformly victimized by UtiliQuest's illegal "ticket to ticket" policy.

92. Other Hourly Utility Locators worked with Perry and indicated they were paid in the same manner, performed similar work, and were subject to UtiliQuest's same illegal "ticket to ticket" policy.

93. Based on his experience with UtiliQuest, Perry is aware UtiliQuest's illegal "ticket to ticket" policy was imposed on the other Hourly Utility Locators.

94. The Hourly Utility Locators are known to UtiliQuest and are readily identifiable through UtiliQuest's business and personnel records.

95. The putative class of Hourly Utility Locators includes more than 100 members.

96. Thus, the Hourly Utility Locators are so numerous that the joining of all potential class members in one lawsuit is impracticable.

97. The Hourly Utility Locators are similarly situated in the most relevant respects.

98. Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to earned wages for all hours worked and overtime pay for all hours worked over 40 in a week.

99. Therefore, the specific job titles or precise locations of the various Hourly Utility Locators do not prevent class treatment.

100.    Rather, the Hourly Utility Locators are held together by UtiliQuest's uniform, illegal "ticket to ticket" policy, which systematically deprived Perry and the other Hourly Utility Locators of earned wages for all hours worked and overtime wages for all hours worked after 40 in a workweek.

101.    UtiliQuest's failure to pay earned wages and overtime wages as required by Maryland wage laws results from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Hourly Utility Locators.

102.    UtiliQuest's records reflect the number of hours the Hourly Utility Locators recorded they worked each week.

103.    UtiliQuest's records also show the number of hours the Hourly Utility Locators *actually* worked each week.

104.    The back wages owed to Perry and the other Hourly Utility Locators can therefore be calculated using the same formula applied to the same records.

105.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to UtiliQuest's records, and there is no detraction from the common nucleus of liability facts.

106.    Therefore, the issue of damages does not preclude class treatment.

107.    Perry's experiences are therefore typical of the experiences of the other Hourly Utility Locators.

108.    Perry has no interest contrary to, or in conflict with, the other Hourly Utility Locators that would prevent class treatment.

109.    Like each Hourly Utility Locator, Perry has an interest in obtaining the unpaid wages owed to them under Maryland law.

110.    Perry and his counsel will fairly and adequately protect the interests of the other Hourly Utility Locators.

111.   Indeed, Perry retained counsel with significant experience in complex class action litigation.

112.   And Perry and his counsel have adequate financial resources to protect the Hourly Utility Locators' interests.

113.   A class action is superior to other available means for fair and efficient adjudication of this lawsuit.

114.   Absent this class action, many Hourly Utility Locators likely will not obtain redress for their injuries, and UtiliQuest will reap the unjust benefits of violating Maryland wage laws.

115.   Even if some of the Hourly Utility Locators could afford individual litigation against UtiliQuest, it would be unduly burdensome to the judicial system.

116.   Indeed, the multiplicity of actions would create a hardship to the Hourly Utility Locators, the Court, and UtiliQuest.

117.   Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Utility Locators' claims.

118.   The questions of law and fact that are common to each Hourly Utility Locator predominate over any questions affecting solely the individual members.

119.   Among the common questions of law and fact are:

a.   Whether UtiliQuest engaged in a policy and practice of prohibiting its Hourly Utility Locators from clocking in for their shifts until they arrived at their first assigned ticket;

b.   Whether UtiliQuest engaged in a policy and practice of requiring its Hourly Utility Locators to clock out for their shifts once they left their last assigned ticket;

c. Whether UtiliQuest knew, or had reason to know, the Hourly Utility Locators were requested, suffered, permitted, or allowed to work "off the clock" before they arrived at their first assigned ticket and after they left their last assigned ticket;

d. Whether UtiliQuest's "ticket to ticket" policy deprived the Hourly Utility Locators of pay for time worked "off the clock" before they arrived at their first assigned ticket and after they left their last assigned ticket in violation of Maryland wage laws;

e. Whether UtiliQuest withheld earned wages from the Hourly Utility Locators for all hours worked, including hours worked "off the clock," in violation of the MWPCL;

f. Whether UtiliQuest failed to pay the Hourly Utility Locators overtime wages for all hours worked after 40 in a workweek, including those worked "off the clock," in violation of the MWHL;

g. Whether UtiliQuest's decision to withhold earned wages from the Hourly Utility Locators was made in good faith;

h. Whether UtiliQuest's decision not to pay the Hourly Utility Locators overtime wages for all overtime hours worked as made in good faith;

i. Whether UtiliQuest's decision to withhold earned wages from the Hourly Utility Locators was the result of a *bona fide* dispute; and

j. Whether UtiliQuest's violations were willful.

120. Perry knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

14

121. As part of its regular business practices, UtiliQuest intentionally, willfully, and repeatedly violated Maryland wage laws with respect to Perry and the other Hourly Utility Locators.

122. UtiliQuest's illegal "ticket to ticket" policy deprived Perry and the other Hourly Utility Locators of earned wages for all hours worked and overtime wages for all hours worked after 40 in a workweek, which they are owed under Maryland law.

### UTILIQUEST'S VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF MARYLAND WAGE LAWS

123. Perry incorporates all other paragraphs by reference.

124. UtiliQuest knew it was subject to the MWHL's overtime provisions.

125. UtiliQuest knew the MWHL required it to pay non-exempt employees, including Perry and the other Hourly Utility Locators, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

126. UtiliQuest also knew it was subject to the MWPCL.

127. UtiliQuest knew the MWPCL prohibits employers, like UtiliQuest, from withholding earned wages from employees, including Perry and the other Hourly Utility Locators, beyond their regular pay day and following their termination of employment.

128. UtiliQuest knew Perry and the other Hourly Utility Locators were non-exempt employees entitled to overtime pay.

129. UtiliQuest knew it paid Perry and the other Hourly Utility Locators on an hourly basis.

130. UtiliQuest knew Perry and each Hourly Utility Locators worked over 40 hours in at least one workweek during the 3 years before this Complaint was filed because UtiliQuest required these employees to record their hours worked using its timeclock system.

131. UtiliQuest knew the MWHL and MWPCL required it to pay employees, including Perry and the other Hourly Utility Locators, for all hours they performed compensable work.

132.    UtiliQuest knew that, as Perry's and the other Hourly Utility Locators' employer, it had a duty to ensure these employees were not performing work "off the clock" (without pay) that UtiliQuest did not want performed.

133.    UtiliQuest knew it prohibited Perry and the other Hourly Utility Locators from clocking in for their shifts until they arrived at their first assigned ticket.

134.    Nonetheless, UtiliQuest knew Perry and the other Hourly Utility Locators performed compensable work "off the clock" before they arrived at their first assigned ticket.

135.    Likewise, UtiliQuest knew it required Perry and the other Hourly Utility Locators to clock out for their shifts when they left their last assigned ticket.

136.    Nonetheless, UtiliQuest knew Perry and the other Hourly Utility Locators performed compensable work "off the clock" after they left their last assigned ticket.

137.    Thus, UtiliQuest knew it requested, suffered, permitted, or allowed Perry and the other Hourly Utility Locators to work "off the clock" before they arrived at their first assigned ticket and after they left their last assigned ticket.

138.    UtiliQuest knew it controlled Perry's and the other Hourly Utility Locators' pre- and post-ticket "off the clock" work.

139.    UtiliQuest knew Perry's and the other Hourly Utility Locators' Locators' pre- and post-ticket "off the clock" work was undertaken for UtiliQuest's predominant benefit.

140.    UtiliQuest knew Perry's and the other Hourly Utility Locators' Locators' pre- and post-ticket "off the clock" work was necessary to the principal work they performed as UtiliQuest Utility Locators.

141.    UtiliQuest knew Perry's and the other Hourly Utility Locators' Locators' pre- and post-ticket "off the clock" work was integral and indispensable to their work as UtiliQuest Utility Locators.

142. Thus, UtiliQuest knew, should have known, or recklessly disregarded whether Perry and the other the Hourly Utility Locators performed compensable work "off the clock" before they arrived at their first assigned ticket and after they left their last assigned ticket.

143. Nonetheless, UtiliQuest did not pay Perry and the other Hourly Utility Locators for the compensable work they performed "off the clock" before they arrived at their first assigned ticket and after they left their last assigned ticket.

144. Thus, UtiliQuest knew, should have known, or recklessly disregarded whether it failed to pay Perry and the other Hourly Utility Locators for all the hours they performed compensable work.

145. UtiliQuest's decision to prohibit Perry and the other Hourly Utility Locators from clocking in for their shifts until they arrived at their first assigned ticket was neither reasonable, nor was it made in good faith.

146. UtiliQuest's decision to require Perry and the other Hourly Utility Locators to clock out for their shifts when they left their last assigned ticket was neither reasonable, nor was it made in good faith.

147. UtiliQuest's failure to pay Perry and the other Hourly Utility Locators overtime wages for all overtime hours worked was neither reasonable, nor was its decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

148. Likewise, UtiliQuest's decision to withhold earned wages from Perry and the other Hourly Utility Locators was neither reasonable, nor was it made in good faith.

149. UtiliQuest's decision to withhold earned wages from Perry and the other Hourly Utility Locators was not the result of a *bona fide* dispute.

150. UtiliQuest knowingly, willfully, and/or in reckless disregard carried out its illegal "ticket to ticket" policy that deprived Perry and the other Hourly Utility Locators of earned wages for

17

all hours worked and overtime wages for all hours worked after 40 in a workweek in violation of the MWHL and MWPCL.

151.     UtiliQuest knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated Maryland wage laws.

152.     Indeed, UtiliQuest has been sued repeatedly by employees for failing to pay earned wages and overtime wages in violation of the FLSA and analogous state wage and hour laws, including for the same illegal "ticket to ticket" policy that is the subject of this lawsuit. *See, e.g.*, *Moreno v. UtiliQuest, LLC*, No. 2:20-CV-03156-AR-MRW (C.D. Cal.); *Muniz v. UtiliQuest, LLC*, No. 2:19-CV-08759-PA-SK (C.D. Cal.); *Turner v. UtiliQuest, LLC*, No. 3:18-CV-00294 (M.D. Tenn.); *Signorelli, et al. v. UtiliQuest, LLC*, No. 5:08-CV-00038-WTH-GRJ (M.D. Fla.).

## COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE MWHL
#### (CLASS ACTION)

153.     Perry incorporates all other paragraphs by reference.

154.     Perry brings his MWHL claims on behalf of himself and the other Hourly Utility Locators pursuant to FED. R. CIV. P. 23.

155.     UtiliQuest's conduct violates the MWHL (MD. CODE, LAB. & EMPL. §§ 3-415 and 3-420).

156.     At all relevant times, UtiliQuest was subject to the MWHL because UtiliQuest was (and is) an "employer" within the meaning of the MWHL. *See* MD. CODE, LAB. & EMPL. § 3-401(b); *cf.* MD. CODE, LAB. & EMPL. § 3-415(b).

157.     At all relevant times, UtiliQuest employed Perry and the other Hourly Utility Locators as its covered "employees" within the meaning of the MWHL. *Cf.* MD. CODE, LAB. & EMPL. § 3-415(c).

18

158. The MWHL requires employers, like UtiliQuest, to pay non-exempt employees, including Perry and the other Hourly Utility Locators, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. *See* MD. CODE, LAB. & EMPL. §§ 3-415(a) and 3-420(a).

159. UtiliQuest violated, and is violating, the MWHL by employing non-exempt employees (Perry and the other Hourly Utility Locators) for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including those worked "off the clock." *See* MD. CODE, LAB. & EMPL. §§ 3-415(a) and 3-420(a).

160. UtiliQuest's unlawful conduct harmed Perry and the other Hourly Utility Locators by depriving them of the overtime wages they are owed.

161. Accordingly, UtiliQuest owes Perry and the other Hourly Utility Locators the difference between the overtime wages actually paid and the proper overtime wages actually earned. *See* MD. CODE, LAB. & EMPL. § 3-427(a)(1).

162. Because UtiliQuest did not act in good faith and did not reasonably believe its policies did not violate the MWHL, UtiliQuest is also liable to Perry and the other Hourly Utility Locators for an additional amount equal to all their unpaid overtime wages as liquidated damages. *See* MD. CODE, LAB. & EMPL. §§ 3-427(a)(2) and (d)(2).

163. Finally, Perry and the other Hourly Utility Locators are entitled to recover all reasonable attorneys' fees and costs incurred in this action. *See* MD. CODE, LAB. & EMPL. § 3-427(a)(3).

## COUNT II

### WITHHOLDING EARNED WAGES UNDER THE MWPCL
### (CLASS ACTION)

164. Perry incorporates all other paragraphs by reference.

165.     Perry brings his MWPCL claims on behalf of himself and the other Hourly Utility Locators pursuant to FED. R. CIV. P. 23.

166.     UtiliQuest's conduct violates the MWPCL (MD. CODE, LAB. & EMPL. §§ 3-501, *et seq.*).

167.     At all relevant times, UtiliQuest was subject to the MWPCL because UtiliQuest was (and is) an "employer" within the meaning of the MWPCL. *See* MD. CODE, LAB. & EMPL. § 3-501(b).

168.     At all relevant times, UtiliQuest employed Perry and the other Hourly Utility Locators as its covered "employees" within the meaning of the MWPCL.

169.     The MWPCL requires employers, like UtiliQuest, to pay employees, including Perry and the other Hourly Utility Locators, all wages (including "straight time" and overtime wages) earned, due, and owing to them on their regular payday, which must occur at least once every two weeks or twice each month. *See* MD. CODE, LAB. & EMPL. § 3-502(a).

170.     The MWPCL further prohibits employers, like UtiliQuest, from withholding earned wages from employees, including Perry and the other Hourly Utility Locators, for more than two weeks from the date such wages were earned and after termination of employment. *See* MD. CODE, LAB. & EMPL. §§ 3-502(a) and 3-505(a).

171.     During the course of their employment, UtiliQuest agreed to pay Perry and each Hourly Utility Locator an hourly (or "straight time") rate for all hours they worked under and up to 40 in a workweek, as well as a "time and a half" overtime rate for all hours they worked over 40 in a workweek.

172.     Perry and each Hourly Utility Locator accepted UtiliQuest's offer.

173.     UtiliQuest violated, and is violating, the MWPCL by willfully withholding earned wages from Perry and the other Hourly Utility Locators, including wages earned working "off the clock," beyond their regular pay day and/or after termination of their employment. *See* MD. CODE, LAB. & EMPL. §§ 3-502(a) and 3-505(a).

174. UtiliQuest has withheld Perry's and the other Hourly Utility Locators' earned wages for more than two weeks from when they were earned, due, and payable.

175. UtiliQuest's unlawful conduct harmed Perry and the other Hourly Utility Locators by depriving them of the earned wages they are owed.

176. UtiliQuest's failure to pay Perry and the other Hourly Utility Locators all wages earned beyond their regular pay day and/or after termination of their employment was not the result of a *bona fide* dispute.

177. Accordingly, UtiliQuest owes Perry and the other Hourly Utility Locators their unlawfully withheld earned wages under the MWPCL. *See* MD. CODE, LAB. & EMPL. § 3-507.2.

178. Because UtiliQuest's failure to pay Perry and the other Hourly Utility Locators their earned wages was not the result of a *bona fide* dispute, UtiliQuest is liable to Perry and the other Hourly Utility Locators for treble damages in an amount equal to three times their unpaid earned wages. *See* MD. CODE, LAB. & EMPL. § 3-507.2(b).

179. Finally, Perry and the other Hourly Utility Locators are entitled to recover all reasonable attorneys' fees and costs incurred in this action. *See* MD. CODE, LAB. & EMPL. § 3-507.2(b).

## JURY DEMAND

180. Perry demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Perry, individually and on behalf of the other Hourly Utility Locators, seeks the following relief:

      a.      An Order certifying a class action pursuant to FED. R. CIV. P. 23;

      b.      An Order appointing Perry and his counsel to represent the interests of the Hourly Utility Locators;

c.  An Order finding UtiliQuest liable to Perry and the other Hourly Utility Locators for unpaid overtime wages owed under the MWHL, plus liquidated damages in an amount equal to their unpaid overtime wages;

d.  An Order finding UtiliQuest liable to Perry and the other Hourly Utility Locators for withheld earned wages owed under the MWPCL, plus treble damages in an amount equal to three times their withheld earned wages;

e.  Judgment awarding Perry and the Hourly Utility Locators all unpaid wages, withheld earned wages, liquidated damages, treble damages, statutory damages, and any other penalties available under the MWHL and MWPCL;

f.  An Order awarding attorneys' fees, costs, and expenses;

g.  Pre- and post-judgment interest at the highest applicable rates; and

h.  Such other and further relief as may be necessary and appropriate.

Dated: December 12, 2023.

Respectfully submitted,

**JOSEPHSON DUNLAP LLP**

By: */s/ Taylor A. Jones*

        Taylor A. Jones
        MD Bar No. 1612130317
        Michael A. Josephson*
        Andrew W. Dunlap*
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:    (713) 352-3300
tjones@mybackwages.com
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:    (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PERRY AND
THE HOURLY UTILITY LOCATORS**